**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ELLEN F. GROSS,

     Plaintiff,

        v.                                    Civil Action No.  12-1531 (JEB)

LOGISTICS SUPPORT, INC.,

     Defendant.

**MEMORANDUM OPINION**

From January 2010 until she was terminated in June 2011, Plaintiff Ellen Gross was

employed as a human-resources manager by Logistics Support, Inc., a contractor that specializes

in providing logistics support services to the military.  She alleges that shortly after announcing

she was pregnant, LSI abruptly decided to terminate her, rather than moving forward with a

previously planned decision to fire another, non-pregnant HR professional.  This, she claims,

violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*  LSI

now moves for summary judgment, asserting that Gross has failed to present any credible

evidence to rebut its legitimate, nondiscriminatory reason for terminating her – specifically, that

she and two other employees were laid off to reduce costs and increase profitability.  Because the

Court finds that there is sufficient evidence upon which a jury could find that LSI's reason for

terminating Gross was pretextual, it will deny Defendant's Motion.

**I.      Background**

Unless otherwise noted, the facts set forth herein are undisputed and are drawn from the

parties' Statements of Undisputed Material Facts submitted pursuant to Local Civil Rule 7(h).

In January 2010, Plaintiff was hired by LSI as an HR Manager.  See Mot., Attach. 2 (Deposition of David Compton) at 40:6-12.  In this part-time position, she worked three days a week administering LSI's employee-benefits programs, acting as the company's liaison and contact point with respect to coordinating employment benefits, maintaining employee records, and recruiting personnel to staff its contracts.  See Def.'s Statement of Undisputed Material Facts, ¶ 13 (citing Compton Dep. at 45:16-22); Compton Dep. at 46:14-22; Mot., Attach. 3 (Deposition of Steven MacDonald) at 44:11-15; Attach. 1 (Deposition of Ellen Gross) at 44:12–45:3, 82:9-11.  In March 2011, LSI hired an additional full-time HR professional, Kathy Meyer, to assist the company in its recruiting efforts.  See Gross Dep. at 65:2-5; Compton Dep. at 71:11-16, 150:9-13, 201:1.  In addition to working on recruiting tasks, Meyer also assisted Gross with general HR duties.  See Mot., Attach. 4 (Deposition of Kathy Meyer), at 40:6-11, 109:5–111:5.

In April 2011, LSI's management convened strategy sessions to discuss the company's financial situation, including plans for growing its business and cutting costs.  See Mot., Exh. 8 (LSI Strategic Plan); Compton Dep. at 29:12–30:4, 86:4-8, 106:5-8.  While both parties devote a substantial portion of their briefing to a discussion of the specifics of LSI's financial health, see Mot. at 12-17, 28-30; Opp. at 12-13, 20-21; Reply at 3-10, 13-19, because this issue does not ultimately influence the Court's decision, it will not be further detailed here.

Pursuant to LSI's efforts to reduce costs, its management identified eight overhead or General and Administrative employees whom it was considering for termination.  See Compton Dep. 86:4-17; MacDonald Dep. at 71:6–72:20, 83:3-20, 192:4-17.  Both Gross and Meyer were identified on the list, with a notation indicating "can't afford 2 HRs."  See Compton Dep., Exh. 4 (2011-2015 Strategic Hires/BD Approach).  The following month, David Compton, LSI's founder and CEO, had a meeting with Gross wherein he advised her that due to financial

concerns at the company, he was considering "letting Kathy Meyer go or at least cutting her hours back." <u>See</u> Pl.'s SMF, ¶ 42 (citing Compton Dep. at 63:8–64:1, 67:6-14).  This meeting was memorialized in an internal memo.  <u>See</u> Opp., Exh. L (May 20, 2011, Memorandum) ("I mentioned one particular area that I would be reviewing would be cutting back on our G&A/OH personnel.  I stated that we would have to look at perhaps letting Kathy Meyer go or at least cutting her hours back.").  Compton did not have a similar conversation with Meyer to discuss the possibility of terminating Gross.  <u>See</u> Pl.'s SMF, ¶ 42 (citing Compton Dep. at 68:4-7).

On June 6, two and a half weeks after her meeting with him, Gross announced her pregnancy to Compton and LSI's COO, Steve MacDonald.  <u>See</u> Pl.'s SMF, ¶ 45 (citing Gross Dep. at 17:13-22, 23:2–24:4).  Both managers congratulated Gross on the news, <u>see</u> Def.'s SMF, ¶ 18 (citing Gross Dep. at 165:2-22), and there was no further discussion of her pregnancy with LSI's management.  <u>See</u> <u>id.</u> (citing Gross Dep. at 167:16-21, 168:5–169:18).

On June 22, only sixteen days after Gross's announcement, she was terminated along with two other G&A employees as part of a reduction in force.  <u>See</u> Def.'s SMF, ¶ 9 (citing Gross Dep. at 173:4-8; MacDonald Dep. at 85:16-20).  LSI maintains that these terminations were part of its efforts to reduce its operating costs and had nothing to do with Gross's performance.  <u>See</u> <u>id.</u>, ¶ 10 (citing MacDonald Dep. at 111:7-22, 184:22–185:17); Compton Dep. at 180:20-22.  LSI further contends that Gross's pregnancy was not a factor in its decision to terminate her.  <u>See</u> MacDonald Dep. at 209:5-8.  Meyer, who was not pregnant at the time of Gross's termination, assumed Gross's HR responsibilities following her departure.  <u>See</u> Pl.'s SMF, ¶ 49 (citing Compton Dep. at 214:2-7; MacDonald Dep. at 198:19-22); Compton Dep., Exh. 17 (March 16, 2012, Corporate Overview) at 4.  In its briefing, but without record citations, LSI offers a variety of explanations for why Meyer was retained over Gross.  <u>See</u> Mot. at 30

(Meyer's ability to work full time, her better recruiting skills, her ability to travel, and her graduate degree in Human Resource Management).

Subsequent to Gross's termination, she filed a complaint with the Equal Employment Opportunity Commission alleging that LSI had unlawfully discriminated against her because of her pregnancy.  She was then issued a right-to-sue notice and filed this suit 18 months later.  See Compl., ¶¶ 14-15.  Having completed discovery, LSI has filed this Motion for Summary Judgment, which the Court now considers.

## II.     Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the substantive outcome of the litigation.  Holcomb, 433 F.3d at 895; Liberty Lobby, Inc., 477 U.S. at 248.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, Inc., 477 U.S. at 248; Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).

The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified."  Taxpayers Watchdog, Inc., v. Stanley, 819 F.2d 294, 297 (D.C. Cir. 1987).  When a motion for summary judgment is under consideration, "the evidence of the non-movant[s] is to be believed, and all justifiable inferences are to be drawn in [his] favor."  Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. PEPCO,

4

447 F.3d 843, 850 (D.C. Cir. 2006); <u>Aka v. Washington Hospital Center</u>, 156 F.3d 1284, 1288

(D.C. Cir. 1998) (*en banc*).  On a motion for summary judgment, the Court must "eschew

making credibility determinations or weighing the evidence."  <u>Czekalski v. Peters</u>, 475 F.3d 360,

363 (D.C. Cir. 2007).

       The nonmoving party's opposition, however, must consist of more than mere

unsupported allegations or denials and must be supported by affidavits, declarations, or other

competent evidence, setting forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  The nonmovant is

required to provide evidence that would permit a reasonable jury to find in its favor.  <u>Laningham</u>

<u>v. United States Navy</u>, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the nonmovant's evidence is

"merely colorable" or "not significantly probative," summary judgment may be granted.  <u>Liberty</u>

<u>Lobby, Inc.</u>, 477 U.S. at 249-50.

## III.    Analysis

       LSI contends that it is entitled to summary judgment because it has successfully asserted

a legitimate, nondiscriminatory reason for its decision to terminate Gross, and she has failed to

produce evidence that this explanation was pretextual.  <u>See</u> Mot. at 21-31.  The Court disagrees.

       Where, as here, "an employee has suffered an adverse employment action and an

employer has asserted a legitimate, non-discriminatory reason for [its employment] decision,"

the traditional burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792

(1973), "'drops out of the picture,'" and the Court deploys a simpler analysis:

>            [I]n considering an employer's motion for summary judgment or
>            judgment as a matter of law in those circumstances, the district
>            court must resolve one central question: Has the employee
>            produced sufficient evidence for a reasonable jury to find that the
>            employer's asserted non-discriminatory reason was not the actual
>            reason and that the employer intentionally discriminated against

> the employee on the basis of race, color, religion, sex, or national origin?

Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993) (internal quotation marks omitted)).  This Court "need not – and should not – decide whether the plaintiff actually made out a *prima facie* case under McDonnell Douglas."  Brady, 520 F.3d at 494 (emphasis in original); Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142-43 (2000) (when defendant offers evidence that plaintiff was terminated for legitimate, nondiscriminatory reason, sole remaining issue is "discrimination *vel non*") (citing United States Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 714 (1983)).  Even if the Court were required to do so, however, Defendant has conceded that Gross has made out a *prima facie* showing of her claim.  See Mot. at 22.

The Court's task here, therefore, is to determine whether Gross has produced sufficient evidence for a reasonable jury to find that LSI's asserted reasons for her termination were pretexts for discrimination.  See Brady, 520 F.3d at 494; see also Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  As the D.C. Circuit has held, moreover, "'[E]ven if [the employee] show[s] that [the asserted reason] was not the actual reason for his [adverse employment action], he still would have to demonstrate that the actual reason was a . . . discriminatory [or retaliatory] reason.'"  Gilbert v. Napolitano, 670 F.3d 258, 261 (D.C. Cir. 2012) (quoting Brady, 520 F.3d at 496 n.4) (alterations in original); see also Cones v. Shalala, 199 F.3d 512, 519 (D.C. Cir. 2000) (evidence must be sufficient for a reasonable jury "to conclude that [the asserted] rationale was not just pretext, but pretext for discrimination") (emphasis in original).  In other words, Plaintiff's burden of "demonstrat[ing] that the proffered reason was not the true reason . . . merges with the ultimate burden of persuading the court that

she has been the victim of intentional discrimination." Burdine, 450 U.S. at 256.  LSI is entitled

to summary judgment only if the evidence, viewed in the light most favorable to Plaintiff and

drawing all reasonable inferences in her favor, is such that "no reasonable jury" could find that

Defendant's asserted reasons were in fact pretexts for discrimination.  See Hamilton v. Geithner,

666 F.3d 1344, 1351 (D.C. Cir. 2012) (citing Jones v. Bernanke, 557 F.3d 670, 674, 681 (D.C.

Cir. 2009)).

　　　Defendant contends that Plaintiff's only evidence of discrimination is the temporal

proximity of her pregnancy announcement to her termination, which is insufficient to rebut an

employer's legitimate reason for the adverse employment action.  See Mot. at 23-24 (citing

Pendleton v. Holder, 697 F. Supp. 2d 12, 23 (D.D.C. 2010) (citing Woodruff v. Peters, 482 F.3d

521, 530 (D.C. Cir. 2007))).  This argument, however, ignores the undisputed fact that on

May 20, 2011, barely more than two weeks before Gross announced her pregnancy, LSI had

informed her that it was considering terminating a different employee (Meyer).  Only a month

later, it abruptly reversed course and elected to terminate Gross instead.  The only significant

intervening event was Gross's disclosure.

　　　While Defendant contends that both HR professionals were under consideration for

termination as early as April 2011, see Mot. at 14, there is sufficient evidence here for a fact-

finder to conclude that as of May, LSI planned to release Meyer – not Gross – and only switched

upon learning that Gross was pregnant.  See, e.g., Shaffer v. Am. Med. Ass'n, 662 F.3d 439,

444-45 (7th Cir. 2011) (finding summary judgment premature where reasonable jury could find

employer chose to terminate plaintiff for exercising his right to take FMLA leave based on

evidence that employer changed his mind about which employee to terminate shortly after

plaintiff requested leave); Hall v. Family Care Home Visiting Nurse and Home Care Agency,

LLC, 696 F. Supp. 2d 190, 199-201 (D. Conn. 2010) (pretext possible where plaintiff proffered evidence of discrepancies in lists identifying potential terminations from which jury could conclude employer decided to terminate her only after she disclosed her pregnancy).

At the end of the day, a jury could reasonably view the evidence here in favor of either party: it could conclude that LSI was simply implementing cost-cutting measures when it terminated Gross, or it could decide that LSI had planned to terminate Meyer and only decided to eliminate Gross after she announced her pregnancy.  Because this case hinges on credibility determinations, it would be premature for the Court to rule as a matter of law.  See Primas v. Dist. of Columbia, No. 12-7078,  2013 WL 3108668, at *4 (D.C. Cir. June 21, 2013) (where "case hinges on the answer to a question that itself hinges on credibility determinations more appropriately made from a jury's box than a judge's bench . . . it is the jury's job – not [a court's] – to choose between them").  The Court will thus deny Defendant's Motion.

## IV. Conclusion

For the foregoing reasons, the Court will deny Defendant's Motion for Summary Judgment.  A separate Order consistent with this Opinion will be issued this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  July 8, 2013